**2025 BNH 001**

_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | |
| **Christine Marie Ansin**, | Case No. 23-10366-PGC |
| Debtor. | |
| | |
| **Robert Ansin**, | |
| | Adv. No. 23-1011-PGC |
| Plaintiff. | |
| v. | |
| **Christine Marie Ansin**, | |
| Defendant. | |

## MEMORANDUM OF DECISION

Plaintiff Robert Ansin asks the Court to grant summary judgment in his favor on the two nondischargeability counts of his complaint against defendant Christine Marie Ansin. Mr. Ansin argues that the issues raised and addressed in the contempt order issued by the Superior Court of New Hampshire must be given preclusive effect here and, when done so, they support the entry of summary judgment in his favor. Specifically, he maintains that the issues determined by the state court in connection with its contempt order are virtually identical to those required to prevail on his nondischargeability claims in Count I of his complaint under 11 U.S.C. § 523(a)(4) and in Count II of his complaint under 11 U.S.C. § 523(a)(6).

Ms. Ansin disagrees. First, she asserts that there are genuine issues of material fact as to (1) her state of mind, and (2) whether the property which was the subject of the contempt order was owned by Mr. Ansin. She also argues that claim preclusion does not apply to this adversary proceeding because the causes of action are not the same in the two proceedings. Finally, she maintains that issue preclusion does not apply because the causes of action for larceny and embezzlement under § 523(a)(4) and for willful and malicious injury to property under § 523(a)(6) contain different elements than the claims decided in the contempt order.

Following a review of the record before the Court and for the reasons set forth below, the Court hereby denies Mr. Ansin's motion for summary judgment on Count I and grants summary judgment in his favor on Count II.

**I. JURISDICTION and VENUE**

This Court has jurisdiction over the subject matter and the parties pursuant to 11 U.S.C. § 523(a)(4) and (6), 28 U.S.C. §§ 157, 1334; and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire. This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(I). Venue is appropriate pursuant to 28 U.S.C. § 1409(a) because Mr. Ansin's complaint arises in Ms. Ansin's underlying bankruptcy case which is properly in the United States Bankruptcy Court for the District of New Hampshire.

**II. SUMMARY JUDGMENT STANDARD**

The summary judgment process in bankruptcy proceedings is governed by Federal Rule of Bankruptcy Procedure 7056, which incorporates Federal Rule of Civil Procedure 56 and its standard into bankruptcy practice. Weiss v. Wells Fargo Bank, N.A. (In re Kelley), 498 B.R.

2

392, 397 (B.A.P. 1st Cir. 2013) (citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 762 (1st Cir. 1994)); Fed R. Bankr. P. 7056; Fed. R. Civ. P. 56. Summary judgment is in order if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (quoting Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011)). A court must draw all reasonable inferences in favor of the nonmoving party but is "not obliged to accept as true or to deem as a disputed fact, each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party." Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 47 (1st Cir. 2008); see Adamson v. Walgreens Co., 750 F.3d 73, 78 (1st Cir. 2014); Askenaizer v. Pierce (In re St. Laurent), Bk. No. 21-10693-BAH, Adv. No. 22-1017-BAH, 2024 WL 780572, at *1 (Bankr. D.N.H. Feb. 26, 2024).

### III. SUMMARY JUDGMENT RECORD

The following facts are not in dispute.

1. The parties were divorced on November 29, 2021 by a final decree issued by the 10th Circuit Court – Family Division – Derry of the State of New Hampshire (the "State Court"). Complaint and Objection to Discharge (the "Complaint") (Docket Entry ("D.E.") 1) ¶ 11, Ex. A, Ex. B; Complaint ¶ 20, Ex. B; Answer of Christine Marie Ansin (the "Answer") (D.E. 10) ¶¶ 11, 26.

3

2. At the time of the parties' divorce, their marital property included a furnished three-bedroom, four-bathroom home in Derry, New Hampshire, and the contents of a storage unit ("Unit 276") which included furnishings from an apartment the parties had in Boston, Massachusetts. Complaint ¶ 12; Answer ¶ 12.

3. Although Ms. Ansin requested that the State Court award her some of the personal property from the Derry home and all of the personal property in the storage unit, it did not. Instead, the State Court awarded Mr. Ansin the Derry home, all of its contents, and all of the storage unit contents "except that anything located therein which is [Ms. Ansin's] separate property is awarded to her." Complaint ¶¶ 13-17; Answer ¶¶ 13-17.

4. Subsequently, Mr. Ansin filed a motion for contempt, alleging that Ms. Ansin failed to comply with the State Court property award. Following an evidentiary hearing, the State Court issued an order granting the motion for contempt (the "Contempt Order")[1]. Specifically, the State Court found and held:

> When … [Mr. Ansin] entered the marital home after . . . [Ms. Ansin] vacated it and after the Final Decree was issued, he discovered that virtually all of the contents had been removed "including, without limitation, three beds, a sectional sofa, three recliners, a massage chair, rugs, three flatscreen TVs, speakers, all of the kitchenware, two mountain bikes, two kayaks, and two paddle boats." [Mr. Ansin] . . . "conservatively estimate[d] that the replacement cost of the items taken [from the marital home was] in excess of $60,000."
> . . .
>
> [Ms. Ansin] confirmed . . . that following the issuance of the Final Decree, she transferred the ownership of the storage unit known as Unit 276, to . . . [Mr. Ansin].
> . . .
>
> Photographs taken by . . . [Mr. Ansin] in November of 2020, when he left the marital home pursuant to the Temporary Decree, and on December 30, 2021, when he re-entered the home after . . . [Ms. Ansin] vacated it following the issuance of the Final Decree,

---

[1] A copy of the Contempt Order is attached as Exhibit B to Robert Ansin's Declaration in Support of Motion for Summary Judgment, D.E. 25-2.

4

show that the large kitchen was completely empty of anything that was not affixed. There was not one item left in any cabinet, in any drawer, or on any countertop . . . [S]mall appliances such as a kitchen aid mixer that had once been in the kitchen cabinets were all gone, and that furniture and other property had been removed from the living rooms, bedrooms and sunroom, including flat screen televisions that clearly had been removed from their wall-mounts, many rugs, and several pieces of furniture to include a sectional couch, a massage chair, other large chairs, tables, and beds.  Photographs taken by . . . [Mr. Ansin] during the same two time frames evidence that mountain bikes, which . . . [Ms. Ansin] confirmed were the property of . . . [Mr. Ansin]'s children, had also been removed.
. . .

The photographs that [Mr. Ansin] took of [storage] Unit 276 in November 2020, and later after the Final Decree issued, clearly depict that the unit had been fully filled on the earlier date, and that on the later date, it was nearly emptied out.
. . .

[Ms. Ansin's] counsel represented during his offer of proof – the truth of which was sworn to under oath by . . . [Ms. Ansin] – that . . . [she] gave away the contents of the marital home to pay back people who gave her funds during the divorce.
. . .

[Ms. Ansin] testified during this hearing that she was not at the home when her friends and family, who had given her money during the divorce, entered the home to take its contents as gifts from her.  She testified that they knew the code to enter through the garage.
. . .

[Mr. Ansin] paid a total of $87,582.95 between April 7, 2015 August 3, 2016 to furnish the . . . [Boston] apartment.
. . .

The furniture and furnishings from the . . . [Boston] apartment were packed and removed to storage [Unit 276] . . .

[Ms. Ansin] knew that the Court had rejected her proposal that she be awarded the furniture and furnishings located in the marital home and those held in storage Unit 276, and she knew that the court had instead awarded all (with the exception of her personal effects) to [Mr. Ansin] in the Final Decree.  She nevertheless took a great deal of it anyway (or cause it to be removed).  She has not persuaded the Court that she had good cause for doing so.
. . .

5

> [Ms. Ansin] therefore clearly knew that . . . [Mr. Ansin] was proposing that he be awarded the marital home and its contents, and the contents of the storage Unit 276 . . . , and she herself proposed that she be awarded them and testified that she wanted them. When the Court awarded them to the [Mr. Ansin] and not to . . . [Ms. Ansin] in the Final Decree, . . . [she] took them anyway (or caused them to be removed).
> . . .
>
> [Ms. Ansin] wanted the property, knew that . . . [Mr. Ansin] had also proposed that it be awarded to him, and knew that ultimately the Court rejected her proposal and approved . . . [Mr. Ansin's], and that the marital home and its contents, and the contents of the storage unit, had been awarded to . . . [Mr. Ansin]. She took the property, or caused it to be removed, in clear willful disregard of a court order – the Final Decree.
> . . .
>
> She claims that she does not know to whom she gave the property, or even specifically what was given away. She claims that others – friends and family – entered the home, and the storage unit, at her direction to retrieve the contents, but she could not name any of them but for "the MacMahons" and "people around the lake I honestly don't know who ended up going to the house." It is clear that . . . [Ms. Ansin] cleaned out much of the home and most of the storage unit because the Court did not give her what she felt she was entitled to.

Complaint ¶ 18; Answer ¶ 18; Robert Ansin's Concise Statement of Material Facts Pursuant to Local Rule 56.1(b) ("SMF") (D.E. 25-3) ¶¶ 14-16; Defendant's Response to Plaintiff's Concise Statement of Material Facts ("Response to SMF") (D.E. 28-2) ¶¶ 14-16.

    5. In the Contempt Order, the State Court also noted: "[t]his is one of the most egregious instances of willful contempt that the undersigned has seen." Complaint ¶ 18; Answer ¶ 18.

    6. Ms. Ansin did not appeal the Contempt Order, and it is a final order. Complaint ¶ 19; Answer ¶ 19; SMF ¶ 19; Response to SMF ¶ 19.

    7. The State Court ordered Ms. Ansin to pay Mr. Ansin $195,955.49 for damages caused by her contemptuous conduct. SMF ¶ 20; Response to SMF ¶ 20.

    8. Ms. Ansin filed a chapter 7 bankruptcy case on July 11, 2023, and on August 16, 2023, Mr. Ansin filed a two-count complaint against Ms. Ansin seeking that her obligations to him arising from her contemptuous conduct be declared nondischargeable.

IV. ANAYLYSIS

    A. Rooker-Feldman.

The Court first dispenses with two arguments raised by Ms. Ansin regarding disputes of facts. She asserts that summary judgment must be denied because there are genuine issues of material fact as to (1) her state of mind at the time the property was removed, and (2) the ownership of the property at the time it was removed. In support of her argument about her state of mind, she submitted a paper entitled "Defendant's Affidavit in Support of Objection to Plaintiff's Motion for Summary Judgment"[2], in which she maintains that after the issuance of the divorce decree in November of 2021, she experienced mental health issues and has no specific recollection of most events that occurred between December 2021 and spring 2022. Her second argument concerns the ownership of the property that was the subject of the Contempt Order. She asserts that the State Court lacked jurisdiction over the property because the Contempt Order was issued during the pendency of the parties' appeal of the divorce.

Through these arguments, Ms. Ansin impermissibly asks this Court to alter or change the findings of the Contempt Order in violation of the Rooker-Feldman doctrine.[3]

> The Rooker-Feldman doctrine prohibits lower federal courts, including bankruptcy courts and bankruptcy appellate panels, from reviewing final state court judgments. See, e.g., New Eng. Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power

---

[2] Although not determinative, the Court notes that Ms. Ansin's "affidavit" does not contain many of the formalities required for affidavits under New Hampshire law, see N.H. Rev. Stat. Ann. 456-B (Uniform Law on Notarial Acts). Federal law allows for an unsworn declaration made in the United States to have the same force and effect as an affidavit, the declaration must be substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746. The "affidavit" of Ms. Ansin indicates that it was "SIGNED UNDER THE PAIN AND PENALTIES OF PERJURY THIS 31st DAY OF JULY 2024." It does not indicate that the information contained is "true and correct."

[3] "The doctrine takes its name from Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Rooker held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the U.S. Supreme Court and is beyond the original jurisdiction of federal district courts. See 263 U.S. at 415-16, 44 S.Ct. 149. Feldman held that this jurisdictional bar extends to particular claims that are 'inextricably intertwined' with those a state court has already decided. See 460 U.S. at 486–87, 103 S.Ct. 1303." Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 403 n.7 (B.A.P. 1st Cir. 2004).

Equip. & Marine, Inc.), 292 F.3d 61, 65 (1st Cir. 2002); Schwartz v. Schwartz (In re Schwartz), 409 B.R. 240, 246-47 (B.A.P. 1st Cir. 2008). The doctrine bars jurisdiction when "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005); see also Riley v. Decoulos (In re Am. Bridge Prods., Inc.), 599 F.3d 1, 4 (1st Cir. 2010). The Panel has explained that Rooker-Feldman applies when: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff invites the federal court to review and reject the judgment; and (4) the state court judgment was rendered before the federal court proceedings began. In re Schwartz, 409 B.R. at 247.

Burgess v. JPMorgan Chase Bank, N.A. (In re Burgess), BAP No. EP 20-016, 2021 WL 2073447, at *5 (B.A.P. 1st Cir. May 21, 2021); see also In re Fuller, Case No. 24-20334-CJP, 2024 WL 3168760, at *2 (Bankr. D. Mass. June 25, 2024).

These circumstances exist here. Ms. Ansin lost in the State Court. She does not want Mr. Ansin to use the findings in the Contempt Order against her. She wants this Court to reject the findings in the Contempt Order that she improperly appropriated and disposed of Mr. Ansin's property. And the Contempt Order was issued over fifteen months before the filing of her bankruptcy case and almost seventeen months before the commencement of this adversary proceeding. During that time, Ms. Ansin chose not to challenge the Contempt Order through post judgment motions or an appeal.

The Rooker-Feldman doctrine applies here and, because of this, Ms. Ansin's first two arguments fail.

B. Issue Preclusion.[4]

Turning now to the pivotal issue, the application of issue preclusion, the Court must determine the import of the Contempt Order, specifically its factual findings, on this adversary

---

[4] Ms. Ansin correctly asserts that claims preclusion is not applicable here. The claims addressed in the Contempt Order are distinct and different from the nondischargeability counts asserted in Mr. Ansin's complaint of embezzlement, larceny, and willful and malicious injury to property. Although Mr. Ansin's motion for summary judgment mentions res judicata (an older term for claim preclusion), its primary focus is on issue preclusion.

8

proceeding. State court proceedings are entitled to the same full faith and credit in federal courts to which they are entitled in the state court. 28 U.S.C. § 1738 ("[J]udicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken."); Allen v. McCurry, 449 U.S. 90, 95 (1980) ("The federal courts generally have also consistently accorded preclusive effect to issues decided by state courts."). To determine whether issues determined in a particular state court proceeding are entitled to preclusive effect in a federal court, the federal court looks to state law. McCrory v. Spigel (In re Spigel), 260 F.3d 27, 33 (1st Cir. 2001) ("We look to state law to determine the preclusive effect of a prior state court judgment."); New Hampshire Motor Transp. Ass'n v. Town of Plaistow, 67 F.3d 326, 328 (1st Cir. 1995); State of N.H. v. Mulcahy (In re Mulcahy), Bk. No. 23-10309-BAH, Adv. No. 23-1013-BAH, 2024 WL 2229700, at *5 n.6 (Bankr. D.N.H. May 16, 2024).

New Hampshire courts have long applied the doctrine of issue preclusion to bar the relitigation of an issue or a fact determined in a prior action if five requirements are satisfied:

> (1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment.

Garod v. Steiner Law Office, PLLC, 170 N.H. 1, 5-6 (2017); 412 S. Broadway Realty, LLC v. Wolters, 169 N.H. 304, 314 (2016); Appeal of Hooker, 142 N.H. 40, 43-44 (1997); Petition of Gilpatric, 138 N.H. 360, 362-63 (1994); Petition of Breau, 132 N.H. 351, 360 (1989). See also Kelly v. N.H. Attorney Gen., Civ. No. 23-cv-527-LM-TSM, 2024 WL 5145940, at *3 (D.N.H. Sept. 18, 2024), report and recommendation adopted sub nom. Kelley v. N.H. Attorney Gen., Civ. No. 23-cv-527-LM-TSM, 2024 WL 5137143 (D.N.H. Dec. 17, 2024).

### 1. 11 U.S.C. § 523(a)(4).

#### (a). Embezzlement.

Turning first to Mr. Ansin's claim under Count I of his complaint, three requirements, numbers 2-4, are easily satisfied. The Contempt Order is a final, non-appealable order which was resolved on the merits. Ms. Ansin appeared in both actions and had a full and fair opportunity to litigate the issues raised in the Contempt Order.

Satisfying the first requirement – whether the issues subject to estoppel are identical in each proceeding – is not so easy. The Contempt Order, logically enough, focused on Mr. Ansin's claim that Ms. Ansin committed contempt by failing to comply with the State Court property award. The State Court found that Ms. Ansin, without good cause, willfully violated the final divorce decree and deliberately took, or caused to taken, the items of personal property located at the former marital residence and at the parties' storage unit that were awarded to Mr. Ansin, resulting in damage to him in the amount of $195,995.49. Underscoring that the claim, addressed in the order, involved contempt, the State Court based its order, at least in part, on the New Hampshire statute requiring the award of attorney's fees in divorce contempt case. N.H. Rev. Stat. Ann. § 458:51 ("In any proceeding under this chapter in which a party alleges, and the court finds, that the other party has failed without just cause to obey a prior order or decree, the court shall award reasonable costs and attorneys' fees to the prevailing party.").

Count I of the Complaint seeks a judgment of nondischargeability premised upon § 523(a)(4) which provides that a "discharge under . . . this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . ." Mr. Ansin does not allege that Ms. Ansin acted in a fiduciary

capacity on his behalf so his claim in Count I can be premised only upon embezzlement or larceny.

The First Circuit has explained that there is no definition of embezzlement in § 523 or elsewhere in the Bankruptcy Code and therefore courts should look to the common law, explaining that embezzlement is "the fraudulent conversion of the property of another by one who is already in lawful possession of it." Sherman v. Potapov (In re Sherman), 603 F.3d 11, 13 (1st Cir. 2010) (quoting United States v. Young, 955 F.2d 99, 102 (1st Cir. 1992)). "[U]sing entrusted money for the recipient's own purposes in a way he knows the entrustor did not intend or authorize" is embezzlement. Sherman, 603 F.3d at 13. Embezzlement in the context of § 523(a)(4) requires: (1) the entrustment of (2) property of another that is (3) fraudulently (4) misappropriated or used for a purpose other than for which it was entrusted. Bailey v. Bailey (In re Bailey), No. 23-8001, 2024 WL 1511984, at *16 (B.A.P. 6th Cir. Apr. 8, 2024); McNulty v. Palecki (In re Palecki), Bankruptcy Case No. 23-14285 TBM, Adv. Pro. No. 23-1267 TBM, 2025 WL 450520, at *21 (Bankr. D. Colo. Feb. 10, 2025); Hays v. Guebara (In re Guebara), Case No. 24-10164-t7, Adv. Proc. 24-01014-t, 2024 WL 3755549, at *3 (Bankr. D.N.M. Aug. 9, 2024); Kuns Northcoast Sec. Center LLC v. Sharp (In re Sharp), Case No. 22-30854, Adv. Pro. No. 22-03039, 2024 WL 2819674, at *6 (Bankr. N.D. Ohio June 3, 2024); Armin Litig., LLC v. Ebrahimpour (In re Ebrahimpour), Case No. 8:19-bk-04182-BAJ, Adv. No. 8:19-ap-00309-BAJ, 2024 WL 1149359, at *5 (Bankr. M.D. Fla. Mar. 15, 2024); see Armstrong v. Carter (In re Carter), Case No. 23-54816-JWC, Adversary Proceeding No. 23-5108-JWC, 2024 WL 4378786, at *6 (Bankr. N.D. Ga. Oct. 1, 2024); Coastal Capital, LLC v. Savage (In re Savage), Bk. No. 17-11760-BAH, Adv. No. 21-1006-BAH, 2023 WL 8252355, at *11 (Bankr. D.N.H. Nov. 28, 2023), aff'd, Case No. 24-cv-59-SM-AJ, 2025 WL 481049 (D.N.H. Feb. 13, 2025).

While fraud is a key component to establishing embezzlement under § 523(a)(4), the act of contempt does not require it. Mr. Ansin does not allege that Ms. Ansin committed fraud and none of the state court orders submitted by Mr. Ansin in support of his motion for summary judgment mention a finding of fraud or fraudulent intent.[5]

This omission is fatal to Mr. Ansin's reliance upon the preclusive effect of the Contempt Order in support of his motion for summary judgment on Count I based upon embezzlement.

(b).  Larceny.

There is no First Circuit guidance on what constitutes larceny under § 523(a)(4), but courts describe it as the fraudulent and wrongful taking of the property of someone else with the intent to appropriate it to the taker's use and to deprive the owner of such property. Guebara, 2024 WL 3755549, at *4; In re Dorado, 400 B.R. 304, 309-10 (Bankr. D.N.M. 2008) (quoting In re Tilley, 286 B.R. 782, 789 (Bankr. D. Colo. 2002)); see Nasif v. Palladino (In re Palladino), 560 B.R. 608, 628 (Bankr. D. Mass. 2016); Plumber's Edge, Inc. v. Veino (In re Veino), Bk. No. 13-12978-BAH, Adv. No. 14-1025-BAH, 2016 WL 6134806, at *6 (Bankr. D.N.H. Oct. 19, 2016). It is distinguished from embezzlement in that larceny requires that the initial acquisition of the property be unlawful. Long v. Piercy (In re Piercy), 21 F.4th 909, 919 (6th Cir. 2021); Ebrahimpour, 2024 WL 1149359, at *5; Dorado, 400 B.R. at 310. So, Mr. Ansin faces two insurmountable hurdles in his effort to have his claim against Ms. Ansin declared nondischargeable under § 523(a)(4) – the Contempt Order makes no findings of fraud and Ms. Ansin did not initially acquire control of the property that was the subject of the Contempt Order in an unlawful manner.

---

[5] The November 29, 2021 Decree of Divorce, the November 29, 2021 Final Decree on Petition for Divorce, the November 29, 2021 Final Order, the Contempt Order, the October 14, 2022 orders on Respondent's Motion to Establish Amount Due and Payment Schedule. Exhibits A, B, and C to Robert Ansin's Declaration in Support of Motion for Summary Judgment, D.E. 25-2.

For these reasons, Mr. Ansin's motion for summary judgment on Count I based upon issue preclusion arising from the Contempt Order is denied.

### 2.  11 U.S.C. § 523(a)(6).

Finally, Mr. Ansin also requests summary judgment on Count II of his complaint which seeks a judgment of nondischargeability premised upon § 523(a)(6).  That subsection provides that a "discharge under . . . this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ."

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional <u>injury</u>, not merely a deliberate or intentional <u>act</u> that leads to injury.  Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury."  Or, Congress might have selected an additional word or words, <u>i.e.</u>, "reckless" or "negligent," to modify "injury."  Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts.  Intentional torts generally require that the actor intend "the <u>consequences</u> of an act," not simply "the act itself."  <u>Restatement (Second) of Torts</u> § 8A, Comment a, p. 15 (1964) (emphasis added).

<u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 61-62 (1998).

The Bankruptcy Appellate Panel for the First Circuit crafted a four-part test for determining nondischargeability under § 523(a)(6):

> (1) the creditor suffered an injury;
> (2) the injury was the result of the debtor's actions;
> (3) the debtor intended to cause the injury or there was a substantial certainty the injury would result from the debtor's act; and
> (4) the debtor had no just cause or excuse for the action resulting in injury.

<u>Gray v. Tacason (In re Tacason)</u>, 537 B.R. 41, 50 (B.A.P. 1st Cir. 2015); see also <u>B.B. v. Bradley (In re Bradley)</u>, 466 B.R. 582, 587 (B.A.P. 1st Cir. 2012) (quoting <u>Hermosilla v. Hermosilla (In re Hermosilla)</u>, 430 B.R. 13, 22 (Bankr. D. Mass. 2010)); <u>Savage</u>, 2023 WL 8252355, at *12.

All four were determined in the Contempt Order. Mr. Ansin suffered injury. He was deprived of property. Ms. Ansin caused the injury – the loss of property – by taking the property or allowing neighbors and friends, including people to whom she owed money, to take it. There was substantial certainty that Mr. Ansin would be deprived of his property by her acts. Finally, the State Court held that she had no just cause for her actions.

For these reasons, Mr. Ansin's motion for summary judgment on Count II based upon issue preclusion arising from the Contempt Order is granted.

## V. CONCLUSION

For the reasons stated above, Mr. Ansin's motion for summary judgment on Count I is denied and his motion for summary judgment on Count II is granted. A separate judgment of nondischargeability in favor of Mr. Ansin and against Ms. Ansin in the amount of $195,955.49 pursuant to 11 U.S.C. § 523(a)(6) shall be entered as required by Rule 7058 of the Federal Rules of Bankruptcy Procedure.

Date: March 14, 2025					/s/ Peter G. Cary
							Peter G. Cary
							United States Bankruptcy Judge
							District of New Hampshire (by designation)